UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

IN RE:                                                    CASE NO. 12-31309

Henry Lee Johnson Jr., SSN xxx-xx-2105
Sharon Elaine Williams-Johnson, SSN xxx-xx-7206

    7358 Wolfrun Trail
    Fairview Heights, IL 62208

DEBTORS                                                    CHAPTER 11

---

PLAN OF REORGANIZATION

---

NOW COME Debtors and Debtors-in-Possession Henry Lee Johnson Jr. and Sharon Elaine Williams-Johnson, hereinafter "Debtors," and, pursuant to the provisions of Chapter 11 of the United States Bankruptcy Code, hereinafter "Bankruptcy Code," propose the following Plan of Reorganization, hereinafter "Plan" –

1. GENERAL OVERVIEW OF THE PLAN.

Debtors believe that their proposed Plan will result in the greatest possible distribution to all holders of Allowed Claims.

In summary, Debtors propose a plan whereby:

- All Allowed Administrative Claims will be paid in full, with the exception of Post-Confirmation Professional Fee Claims, on or before 14 days after the Effective Date of a Confirmation Order entered by the United States Bankruptcy Court;

- All Allowed Priority Tax Claims will be paid in full, with interest, from a stream of income generated by the Reorganized Debtors' continued operation of their business over a period of five (5) years with all such payments commencing not later than 30 days after the Effective Date of a Confirmation Order entered by the United States Bankruptcy Court, and,

- All Allowed Secured Claims involving real estate will be paid in full, with interest, from a stream of income generated by the Reorganized Debtors' continued operation of their business over a period of 20 years with all such payments commencing not later than 30 days after the Effective Date of a Confirmation Order entered by the United States Bankruptcy Court;

- All Allowed Secured Claims involving personal property will be paid in full, with interest, from

a stream of income generated by the Reorganized Debtors' continued operation of their business over a period of five (5) years with all such payments commencing not later than 30 days after the Effective Date of a Confirmation Order entered by the United States Bankruptcy Court, and,

- All Allowed Unsecured Claims shall be partially paid, *pro rata*, initially from a stream of income generated by the Reorganized Debtors' continued operation of their business over a period of five (5) years with all such payments commencing not later than 30 days after the Effective Date of a Confirmation Order entered by the United States Bankruptcy Court, and subsequently, also partially paid from the proceeds of a recovery on their breach of contract lawsuit entitled *Sharon Williams-Johnson v. St. Clair County, Illinois*, Case No. 11-AR-963, in the St. Clair Circuit Court in Belleville, Illinois.

Even though the proceeds from the breach of contract lawsuit would be approximately the same amount in either case, Debtors believe that the stream of income from the continued operation of their business will generate more funds to pay the Allowed Claims of their Creditors than these Creditors would receive through liquidation in a Chapter 7 proceeding.

The Reorganized Debtors shall retain the right to resolve and liquidate any unliquidated or disputed Claims and also shall retain the right to pursue and liquidate all causes of action, and specifically, that cause of action entitled *Sharon Williams-Johnson v. St. Clair County, Illinois*, Case No. 11-AR-963, in the St. Clair Circuit Court in Belleville, Illinois, and all other causes of action, both choate and inchoate, and not otherwise waived herein, arising under both the Bankruptcy Code and all applicable non-bankruptcy law.

THIS GENERAL OVERVIEW IS QUALIFIED IN ITS ENTIRETY BY REFERENCE BELOW TO THE ACTUAL PROVISIONS OF THE PLAN. THE ACTUAL PLAN PROVISIONS SHALL GOVERN ALL DISTRIBUTIONS TO CREDITORS IN THE EVENT OF ANY INCONSISTENCIES BETWEEN THIS OVERVIEW AND THE PLAN PROVISIONS SET FORTH BELOW.

2. DEFINITIONS, RULES OF INTERPRETATION.

*2.1 Defined Terms.* All capitalized terms used herein shall have the meaning given them in the Definitions attached hereto as EXHIBIT 1, or, if not defined therein, then as defined in the Bankruptcy Code, unless otherwise defined herein or the context clearly requires otherwise.

*2.2 Rules of Construction.* The rules of construction used in 11 U.S.C. §102 shall apply to the construction of this Plan. Unless the context clearly requires otherwise, words in any gender shall include all other genders, whether masculine, feminine or neutral, and singular shall include the plural and plural shall include the singular.

3. CLASSIFICATION OF CLAIMS AND INTERESTS.

The provisions of 11 U.S.C. §1122 require that a plan of reorganization classify the claims of a

debtor's creditors and the interests of any equity holders. The Bankruptcy Code also provides, except for certain claims classified for administrative convenience, that a plan of reorganization may place a claim of a creditor or an interest of an equity claimant in a particular class only if such claim or interest is substantially similar to the other claims of such class. The Bankruptcy Code also requires that a plan of reorganization provide the same treatment or disposition for each claim or interest of a particular class unless the claimant of a particular claim or interest agrees to a less favorable treatment of its claim or interest.

3.1  *Classification Summary.*  Claims and Interests under this Plan are generally described as follows:

(a)  *Administrative & Priority Tax Claim*

(b)  *Secured Claims*

(c)  *Unsecured Claims*

3.2  *Description of Classes.*  Claims and Interests under this Plan are more particularly described as follows:

(a) *Administrative & Priority Tax Claims.*  These Claims consist of Allowed Administrative Claims, including Allowed Professional Fee Claims, and Allowed Priority Tax Claims, pursuant to the provisions of 11 U.S.C. §503 and 11 U.S.C. §507, and are designated as unclassified.

(b) *Secured Claims.*  These claims consist of Allowed Claims of secured creditors who hold valid and perfected security interests or liens, under applicable non-bankruptcy law, in real property of Debtors' estate and are designated as Classes 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, and 18.

(c) *Unsecured Claims.*  These claims consist of Allowed Claims of unsecured creditors that either have timely filed proofs of claim or are not scheduled as disputed, unliquidated or contingent in Debtors' Schedules and are designated as Class 19.

4.  PROVISIONS FOR TREATMENT OF CLAIMS.

4.1  *General.*  All Allowed Claims, as set forth in Sections 3.1 and 3.2, are to be satisfied in the manner set forth in this Section 4.  Pursuant to the provisions of 11 U.S.C. §1123(a)(2), no Class of Claims are considered to be unimpaired under the provisions of this Plan and all Claimants shall be entitled to vote on whether to accept or reject this Plan.

4.2  *Treatment of Administrative and Priority Tax Claims.*

(a)  *Administrative Claims - Unclassified.*

(1)  Filing Administrative Claims and Deadline.  Any Person that claims to hold an Administrative Claim, other than Post-Confirmation Professional Fee Claims, shall file with the Bankruptcy Court an application for payment of such asserted Administrative

Claim and shall serve notice thereof on all parties entitled to such notice on or before the midnight occurring 14 days after the Effective Date. The failure to timely file the application on or before the aforesaid deadline shall result in the Claim being forever barred.

(2)    Payment of Allowed Administrative Claims.  Each Claimant holding an Administrative Claim, except as otherwise set forth in this Plan, shall receive from the Reorganized Debtors either: (i) with respect to Administrative Claims that are Allowed Claims on the Closing Date, the amount of such Claimant's Allowed Claim in one (1) cash payment on the Closing Date, or (ii) with respect to Administrative Claims that become Allowed Claims after the Closing Date, the amount of such Claimant's Allowed Claim in one (1) cash payment within seven (7) business days after such Claim becomes an Allowed Administrative Claim, or, (iii) such other treatment as agreed upon by the Reorganized Debtors and such Claimant.

(3) Pre-Confirmation Professional Fee Claims.  Each Professional whose retention with respect to Debtors' case has been approved by the Bankruptcy Court shall be required to file with the Bankruptcy Court a Professional Fee Claim application for pre-confirmation expenses within 14 days after the Effective Date and to serve notice thereof on all parties entitled to such notice.  The failure to timely file any such application will result in that Professional Fee Claim for pre-confirmation expenses being forever barred.  A Professional Fee Claim with respect to which an application is properly filed shall become an Allowed Administrative Claim only to the extent allowed by Final Order.  Professionals shall receive the full amount of their Allowed Administrative Claim in one (1) cash payment from the Reorganized Debtors within seven (7) business days after such Claim becomes an Allowed Administrative Claim.

(4)  Post-Confirmation Professional Fee Claims.  The Reorganized Debtors anticipate post-confirmation Professional Fee Claims, pursuant to efforts to resolve disputed claims, pursuing any Debtors and Debtors-in-Possession Claims, and otherwise obtaining a Final Order in this Chapter 11 Bankruptcy Case.  Such Fee Claims shall be treated as Administrative Claims under this Plan, and payable in full in one (1) cash payment by the Reorganized Debtors within 21 day of Debtors' receipt of the Professional's application for payment, with supporting documentation, unless the Reorganized Debtors object within the subject 21 day period.

*(b)  Priority Tax Claims – Unclassified.*

There are two (2) known Priority Tax Claims:  1) Internal Revenue Service in the amount of $601.96, and 2) Illinois Department of Revenue in the amount of $2,903.32.

Except to the extent that the holder of an Allowed Priority Tax Claim agrees to a different treatment or the Reorganized Debtors, at their sole option, make a lump sum payment in full, any holder of an Allowed Priority Tax Claim shall receive from the Reorganized Debtors a series of quarterly cash payments of an aggregate value equal to the Allowed Priority Tax Claim on the Closing Date, over a period through the fifth (5th) anniversary of the date of assessment of such Allowed Priority Tax Claim.  All

Allowed Priority Tax Claims shall be paid interest at the rate charged on delinquent taxes, currently four (4) percent compounded daily, but re-determined on a quarterly basis. In addition to the regular default provisions set forth in this Plan, the failure of the Reorganized Debtors to make the payments provided herein on the Allowed Priority Tax Claims and/or any Postpetition tax obligations shall be considered a default as to that taxing authority and shall authorize collection of any unpaid tax liabilities through that authority's administrative collection provisions, but only after and subject to the approval of the Bankruptcy Court after the filing of a motion, notice and a hearing.

4.3  *Treatment of Secured Claims.*

*Class 1 – Community First Bank Claim in the approximate amount of $159,882.19.* The Reorganized Debtors shall pay this Claim in full with an escrow account for real estate taxes and insurance, at 6.00 percent interest, amortized over 240 months from the Effective Date; said payments commencing on or before the Closing Date, and further provided that this Claimant also shall retain its Prepetition lien on the real estate, located at 321 Gettysburg Road in Belleville, Illinois, securing repayment of this indebtedness until payment in full is made.

*Class 2 – Community First Bank Claim in the approximate amount of $172,456.06.* The Reorganized Debtors shall pay this Claim in full with an escrow account for real estate taxes and insurance, at 6.00 percent interest, amortized over 240 months from the Effective Date; said payments commencing on or before the Closing Date, and further provided that this Claimant also shall retain its Prepetition lien on the real estate, located at 302 Estate Drive in O'Fallon, Illinois, securing repayment of this indebtedness until payment in full is made.

*Class 3 – Community First Bank Claim in the approximate amount of $63,614.82.* The Reorganized Debtors shall pay this Claim in full with an escrow account for real estate taxes and insurance, at 6.00 percent interest, amortized over 240 months from the Effective Date; said payments commencing on or before the Closing Date, and further provided that this Claimant also shall retain its Prepetition lien on the real estate, located at 2864 North 89th Street in Fairview Heights, Illinois, securing repayment of this indebtedness until payment in full is made.

*Class 4 – Community First Bank Claim in the approximate amount of $8,961.81.* The Reorganized Debtors shall pay this Claim in full, at 6.00 percent interest, amortized over 240 months from the Effective Date; said payments commencing on or before the Closing Date, and further provided that this Claimant also shall retain its Prepetition liens on the real estate, located at 321 Gettysburg Road in Belleville, Illinois, 302 Estate Drive in O'Fallon, Illinois, and 2864 North 89th Street in Fairview Heights, Illinois, securing repayment of this indebtedness until payment in full is made.

*Class 5 – Bank of America Claim in the amount of $32,483.87.* The Reorganized Debtors shall pay this Claim in full, at 5.875 percent interest, amortized over 240 months from the Effective Date; said payments commencing on or before the Closing Date, and

further provided that this Claimant also shall retain its Prepetition lien on the real estate, located at 27-29 South 57th Street in Belleville, Illinois, securing repayment of this indebtedness until payment in full is made.

*Class 6 – Bank of America Claim in the amount of $22,237.46.*  The Reorganized Debtors shall pay this Claim in full, at 6.00 percent interest, amortized over 240 months from the Effective Date; said payments commencing on or before the Closing Date, and further provided that this Claimant also shall retain its Prepetition lien on the real  estate, located at 27-29 South 57th Street in Belleville, Illinois, securing repayment of this indebtedness until payment in full is made.

*Class 7 – Bank of America Claim in the amount of $37,424.67.*  The Reorganized Debtors shall pay this Claim in full, at 6.00 percent interest, amortized over 240 months from the Effective Date; said payments commencing on or before the Closing Date, and further provided that this Claimant also shall retain its Prepetition lien on the real estate, located at 2930-32 Vernier Road in Belleville, Illinois, securing repayment of this indebtedness until payment in full is made.

*Class 8 – Bank of America Claim in the amount of $12,933.65.*  The Reorganized Debtors shall pay this Claim in full, at 6.00 percent interest, amortized over 240 months from the Effective Date; said payments commencing on or before the Closing Date, and further provided that this Claimant also shall retain its Prepetition lien on the real estate, located at 2930-32 Vernier Road in Belleville, Illinois, securing repayment of this indebtedness until payment in full is made.

*Class 9 – Bank of America Claim in the amount of $27,010.88.*  The Reorganized Debtors shall pay this Claim in full, at 6.00 percent interest, amortized over 240 months from the Effective Date; said payments commencing on or before the Closing Date, and further provided that this Claimant also shall retain its Prepetition lien on the real estate, located at 3539 Marian Court (Front & Rear) in Belleville, Illinois, securing repayment of this indebtedness until payment in full is made.

*Class 10 – Bank of America Claim in the amount of $22,141.15.*  The Reorganized Debtors shall pay this Claim in full, at 6.00 percent interest, amortized over 240 months from the Effective Date; said payments commencing on or before the Closing Date, and further provided that this Claimant also shall retain its Prepetition lien on the real estate, located at 3539 Marian Court (Front & Rear) in Belleville, Illinois, securing repayment of this indebtedness until payment in full is made.

*Class 11 – GMAC  Claim in the amount of $55,427.22.*  The Reorganized Debtors shall pay this Claim in full, at 6.00 percent interest, amortized over 240 months from the Effective Date; said payments commencing on or before the Closing Date, and further provided that this Claimant also shall retain its Prepetition lien on the real estate, located at 4911 West Main Street in Belleville, Illinois, securing repayment of this indebtedness until payment in full is made.

*Class 12 – GMAC  Claim in the amount of $66,225.69.*  The Reorganized Debtors shall pay

this Claim in full, at 6.00 percent interest, amortized over 240 months from the Effective Date; said payments commencing on or before the Closing Date, and further provided that this Claimant also shall retain its Prepetition lien on the real estate, located at 9201 St. Clair Avenue in Fairview Heights, Illinois, securing repayment of this indebtedness until payment in full is made.

*Class 13 – GMAC Claim in the amount of $67,413.99.*  The Reorganized Debtors shall pay this Claim in full, at 6.00 percent interest, amortized over 240 months from the Effective Date; said payments commencing on or before the Closing Date, and further provided that this Claimant also shall retain its Prepetition lien on the real estate, located at 4917-19 West Main Street in Belleville, Illinois, securing repayment of this indebtedness until payment in full is made.

*Class 14 – M&T Bank Claim in the amount of $18,534.35.*  The Reorganized Debtors shall pay this Claim in full, at 4.00 percent interest, amortized over 240 months from the Effective Date; said payments commencing on or before the Closing Date, and further provided that this Claimant also shall retain its Prepetition lien on the real estate, located at 4319 Caseyville Avenue in East St. Louis, Illinois, securing repayment of this indebtedness until payment in full is made.

*Class 15 – First County Bank Claim in the approximate amount of $47,248.40.*  The Reorganized Debtors shall pay this Claim in full, at 5.70 percent interest, amortized over 240 months from the Effective Date; said payments commencing on or before the Closing Date, and further provided that this Claimant also shall retain its Prepetition liens on the real estate, located at 1411 Magdalena Street in Fairview Heights, Illinois, securing repayment of this indebtedness until payment in full is made.

*Class 16 – First County Bank Claim in the approximate amount of $327,892.42.*  The Reorganized Debtors shall pay this Claim in full, at 6.00 percent interest, amortized over 240 months from the Effective Date; said payments commencing on or before the Closing Date, and further provided that this Claimant also shall retain its Prepetition liens on the real estate, located at 10 South 35th Street in Belleville, Illinois, and at 304 Estate Drive in O'Fallon, Illinois, securing repayment of this indebtedness until payment in full is made.

*Class 17 – Wyndham Vacation Resorts Claim in the amount of $7,958.47.*  The Reorganized Debtors shall execute a deed surrendering an interest in a Timeshare in full satisfaction of this Claim.

*Class 18 – St. Louis Community Credit Union Claim in the approximate amount of $20,906.36.*  The Reorganized Debtors shall pay this Claim in full, at 5.25 percent interest, amortized over 60 months from the Effective Date; said payments commencing on or before the Closing Date, and further provided that this Claimant also shall retain its Prepetition lien on the personal property, a 2012 GMC Sierra pickup truck, securing repayment of this indebtedness until payment in full is made.

*4.4 Treatment of Unsecured Claims.*

*Class 19 – Unsecured Claims.*  (a)  Each Claimant holding an Unsecured Claim, except as otherwise set forth in this Plan, initially shall be paid, *pro rata*, over 60 months in an amount equal to the unprotected equity in the real estate located at 2930 Vernier Road in Belleville, Illinois, and at 4319 Caseyville Avenue in East St. Louis, Illinois; said equity totaling $15,107.36 and said payments commencing on or before the Closing Date. In the event that the Reorganized Debtors recover monetary damages, whether by settlement or trial, in that cause of action entitled *Sharon Williams-Johnson v. St. Clair County, Illinois*, Case No. 11-AR-963, in the St. Clair Circuit Court in Belleville, Illinois, they also shall distribute, *pro rata*, lump sum payments to each Claimant holding an Unsecured Claim in the total amount equaling 25 percent of the net proceeds, after payment of all costs and legal fees incurred therein, within 30 days of receiving said recovery, provided, however, that the sum total of said payments shall not exceed the total sum of the Allowed Unsecured Claims.

(b)  With respect to those Unsecured Claims that are Allowed Claims on the Closing Date, a *pro-rata* amount of such Claimant's Allowed Claim, with said amount being calculated in proportion to the total amount of all Allowed Unsecured Claims, on monthly basis over a period of 60 months after the Closing Date.

(c)  With respect to those Unsecured Claims that become Allowed Claims after the Closing Date, a *pro-rata* amount of such Claimant's Allowed Claim with said amount being calculated in proportion to the total amount of all Allowed Unsecured Claims on monthly basis over a period of 58 months after the Closing Date.

(d)  Such other treatment as may be agreed upon between a Claimant and the Reorganized Debtors.

5. MEANS FOR FUNDING THE PLAN.

The Reorganized Debtors shall supply, from the stream of income generated from its continued operations and from any recovery in that cause of action entitled *Sharon Williams-Johnson v. St. Clair County, Illinois*, Case No. 11-AR-963, in the St. Clair Circuit Court in Belleville, Illinois, all funds necessary to make the distributions on the Allowed Claims of all Claimants in accordance with the terms of this Plan.

6. OBJECTIONS TO CLAIMS AND DETERMINATION OF SECURED OR PRIORITY STATUS.

*6.1 Reservation of Right to Bring Actions.*  The Reorganized Debtors reserve the right for up to 60 days following Confirmation of the Plan, the "Claims Allowance Period," or longer, if such extension is granted by the Bankruptcy Court upon the request of the Reorganized Debtors:

(a)  To object to or to reclassify Claims;

(b)  To object to Claims resulting from the rejection of unexpired leases or executory contracts;

(c)  To object to Claims of entities added to Debtors' Schedules by way of amendment;

(d)  To commence proceedings against entities to determine a Creditor's secured or priority status, and,

(e)  To continue or commence actions against any party, Creditor, or Person, including, but not limited to, those described on EXHIBIT 2.

*6.2  Debtors' Authority.*  The Reorganized Debtors shall have the exclusive authority to file and/or otherwise pursue any proceeding described in Section 6.1(a) to Section 6.1(e) and to settle, compromise, withdraw or litigate to judgment such actions.

*6.3  Distribution Upon or Pending Resolution.*  At the end of the Claims Allowance Period and to the extent permitted by 11 U.S.C. §502(e)(1), the Reorganized Debtors shall fund an escrow account for payment of any Claims that are not yet Disallowed or Allowed in the amount of the Claim shown on Claimant's proof of claim or, if no proof of claim was filed, on Debtors' Schedules, subject to Section 6.5 herein.  If an estimation request is filed before the end of the Claims Allowance Period, the Reorganized Debtors initially may fund the escrow account at the amount proposed by them for such Claim, provided, however, that the Reorganized Debtors immediately will reserve any additional funds, based on an order of the Bankruptcy Court in the estimation proceeding.  Any overpayment to this account will be distributed as set forth in Section 4.4.

*6.4  Ongoing Litigation.*  The Reorganized Debtors may (i) liquidate all ongoing litigation matters of any nature in the claims liquidation process in this Bankruptcy Case, or (2) continue to prosecute all ongoing litigation matters as disputed claims in the forum in which said matters currently reside.  Any judgment or other payment due that is not covered by insurance shall be treated as a Class 19 Claim and payable when allowed.  Nothing contained in this Section shall constitute or be deemed a waiver of any Claim, right, or cause of action that Debtors may have against any Person in connection with or arising out of any such ongoing litigation.

*6.5  Distribution Upon or Pending Resolution.  Estimation.*  At any time, the Reorganized Debtors may request that the Bankruptcy Court estimate any contingent or unliquidated Claim to the extent permitted by §502(c) and §502(e) of the Bankruptcy Code, regardless of whether the Debtors previously have objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall have jurisdiction to estimate any Claim at any time during litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection. If the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the Claim, the Reorganized Debtors may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim.   All of the aforementioned Claim objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

7.  ESTABLISHMENT OF CLAIMS BAR DATE.

The Bankruptcy Court entered a notice on July 13, 2012, setting the Bar Date for non-governmental proofs of claim at midnight on November 13, 2012.  This Bar Date notice was served on all creditors and interested parties of record listed on Debtors' Schedules and all amendments thereto.

As a result, midnight on November 13, 2012, was the deadline on or before which a Prepetition claim must be filed by non-governmental Claimants to be treated as timely. Claimants not filing their Prepetition proof of claim or Interest by the approved Bar Date shall have forfeited participation in Debtors' Estate or disposition under this Plan.

8. ESCHEAT.

All Creditors receiving distributions under this Plan shall negotiate each such distribution check within 90 days of receipt or the payment on the check will be stopped and the funds will escheat to the Reorganized Debtors.  In the event there are interim distributions to holders of Allowed Claims and a holder's payment from an earlier interim distribution has escheated to the Reorganized Debtors, then no further payments will be made to such holder and such Claim thereafter will be treated as though it had been disallowed.

9. UNEXPIRED LEASES AND EXECUTORY CONTRACTS.

*9.1 Assumption and Rejection of Leases and Executory Contracts.*  All prepetition unexpired executory contracts and leases, including all contracts that are the subject of agreed orders of adequate protection, and which previously have not been rejected by Debtors, shall be deemed to be assumed by the Reorganized Debtors, pursuant to the provisions of §365 of the Bankruptcy Code on the Effective Date.

*9.2 Cure Payments for Assumed Leases and Contracts.*  On or before the Closing Date, the Reorganized Debtors shall pay in full all amounts necessary to cure all claims of default or for adequate protection, if any, arising as a result of its assumption hereunder of any executory contract or lease, including all unexpired leases for non-residential real property, pursuant to the provisions of 11 U.S.C. §365, provided, however, that the Reorganized Debtors shall remain responsible for performing all obligations and for all outstanding obligations arising under any agreement or promissory note under an assumed lease for non-residential real property.

*9.3 Rejection Damage Claims.*  Claims for damages, if any, suffered by any person or entity as a party to any rejected executory contract or lease shall be included in Class 19, provided, however, that such Claims are filed with the Bankruptcy Court and with Debtors on or before the Effective Date, which is the deemed date of such rejection.

10. EFFECT OF CONFIRMATION OF PLAN.

*10.1 Vesting of Property.*  Upon the Effective Date, and, except to the extent provided for under the provisions of this Plan, the Reorganized Debtors shall be vested with title to all property of its Estate and all claims or causes of action in its favor arising under the Bankruptcy Code or under applicable non-bankruptcy law, including that certain lawsuit entitled *Sharon Williams-Johnson v. St. Clair County, Illinois*, Case No. 11-AR-963, in St. Clair Circuit Court in Belleville, Illinois.

*10.2 Treatment of Contingent or Unliquidated Claims.*  Until such time as a contingent Claim becomes fixed and Allowed, such Claim shall be treated as a Contested Claim for purposes related to allowance and distribution under this Plan and resolved according to the Bankruptcy Code, as applicable.

*10.3 Injunction.* Notwithstanding any otherwise applicable law to the contrary, except as otherwise expressly provided in this Plan, or the Confirmation Order, each and every entity, as defined in the Bankruptcy Code, who holds or may hold claims of any nature, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, against Debtors are permanently enjoined, on and after the Confirmation Date, from in any way commencing, continuing or enforcing in any manner an action to collect such claim.

*10.4 Exculpation.* Debtors, nor any their respective employees, advisors, Professionals, or agents shall not have, nor incur, any liability for any act or omission in connection with, related to, or arising out of any Claims against Debtors in this Chapter 11 Bankruptcy Case, including, but not limited to, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence as determined by a Final Order of the Bankruptcy Court, and, in all respects, said parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities in the Chapter 11 Bankruptcy Case and under the Plan.

*10.5 Releases.* As of the Closing Date, in consideration for the performance of the obligations of the Reorganized Debtors under this Plan, to the fullest extent permissible under applicable law, including such law as may be extended subsequent to the Effective Date, each entity that holds or may hold a Claim, arising out of this Chapter 11 Bankruptcy Case, against Debtors shall be deemed to forever release, waive and discharge all such Claims and causes of action.

*10.6 Debtors' Post-Confirmation Obligations.* The Reorganized Debtors shall remain responsible for compliance with all Federal, state and local laws and regulations associated with the continued operation of their business.

11. RETENTION OF JURISDICTION.

*11.1 Broad Retention.* Entry of the Confirmation Order, the occurrence of the Effective Date or Consummation of the Plan notwithstanding, the Bankruptcy Court shall retain such jurisdiction as is legally permissible to ensure that all provisions of this Plan are carried out.

*11.2 Other Specific Purposes.* The Bankruptcy Court shall retain jurisdiction in this bankruptcy case for the following purposes:

(a) To modify this Plan after Confirmation, pursuant to the provisions of 11 U.S.C. §1127, but subject to the limitations set forth in 11 U.S.C. §1122, 11 U.S.C. §1123, and 11 U.S.C. §1125.

(b) To determine requests for payment of Claims entitled to priority under the provisions of 11 U.S.C. §507(a)(1), including compensation of and reimbursement of expenses of parties entitled thereto;

(c) To resolve controversies and disputes regarding interpretation and implementation of this Plan;

(d) To determine any and all applications, Claims, adversary proceedings, and contested

or litigated matters pending on the Effective Date;

(e)  To determine any action reserved to Reorganized Debtors in Section 6.1 herein;

(f)  To allow, disallow, estimate, liquidate or determine any Claim against Debtors and to enforce any order tendered by Debtors requiring the filing of any such Claim before a particular date;

(g)  To determine any and all pending motions for the rejection of executory contracts or leases, and to hear and determine, and if need be to liquidate, any and all Claims arising therefrom;

(h)  To correct any defect, cure any omission, or reconcile any inconsistency in this Plan or the Order of Confirmation as may be necessary to carry out the purposes and intent of the Plan;

(i)  To decide issues concerning Federal tax liability, reporting and withholding, if any, which may arise in connection with Confirmation or Consummation of this Plan, and,

(j)  To enter a final decree closing this Chapter 11 Bankruptcy Case.

11.3  *Final Order Closing Case.*  Nothing contained within this Section 11 shall preclude Reorganized Debtors from seeking the entry of an order closing this Chapter 11 Bankruptcy Case.  Any order closing this Chapter 11 Bankruptcy Case shall provide that the Bankruptcy Court shall (i) retain jurisdiction to enforce by injunctive relief or otherwise the Confirmation Order, any other orders entered in this Case and the contractual obligations created by the Plan, and (ii) retain all other jurisdiction and authority granted to it under the Plan.

11.4  *Failure of Bankruptcy Court to Exercise Jurisdiction.*  If the Bankruptcy Court abstains from exercising, or declines to exercise jurisdiction or is otherwise without jurisdiction over any matter arising out of this Case, including the matters set forth in this Section 11, this Section 11 shall not diminish, control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

12.  EFFECTIVE DATE AND CONSUMMATION.

12.1  *Prior to the Effective Date.*  Prior to, and, as a condition of the Effective Date, the Confirmation Order shall be in form and substance satisfactory to Debtors.

12.2  *Conditions to Confirmation.*  Confirmation of the Plan shall not occur unless and until each of the following conditions shall have been satisfied or waived:

(a)  The Confirmation Order shall approve and provide for the right to pursue the actions described in Section 6.1.

(b)  The Confirmation Order shall provide that the full payment of all Allowed Claims of a Person by Debtors is in full and final satisfaction and payment of any and all claims such

Person may have against Debtors, the Reorganized Debtors, or any duly-authorized Person or entity acting on behalf of Debtors or the Reorganized Debtors;

(c)  The Confirmation Order and its supporting findings of fact and conclusions of law shall be in form and substance satisfactory to Debtors and the Reorganized Debtors, and,

(d)  Any other orders approved by the Bankruptcy Court to aid in effecting and implementing the Plan shall be satisfactory to Debtors and the Reorganized Debtors in form and substance.

*12.3  Effective Date.*  The Reorganized Debtors shall commence to make any and all distributions authorized hereunder on or before 30 days after the Effective Date.

*12.4  Consummation of the Plan.*  Consummation shall occur on the Closing Date.

*12.5  Post-Confirmation Actions.*  After Confirmation, the Reorganized Debtors may remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Order of Confirmation in any manner as may be necessary to carry out the purposes and effect of the Plan without the approval of the Bankruptcy Court, so long as said remedy or reconciliation does not materially or adversely affect the interests of Claimants.

13.  MISCELLANEOUS PROVISIONS.

*13.1  Headings.*  All section headings set forth in this Plan are for convenience and reference purposes only and shall not be deemed to constitute a substantive part of this Plan or used for any other purpose.

*13.2  Modification and Amendments.*  This Plan shall not be modified except upon the agreement of Debtors or the Reorganized Debtors, as the case may be.

*13.3  Notice of Default.*  In the event of any alleged default under the Plan, any Claimant or party-in-interest must give a written default notice to the Reorganized Debtors or the United States Trustee, as the case may be, with copies to counsel of record for Debtors, as applicable, specifying the nature of the default.  Upon receipt of the default notice, the Reorganized Debtors or the United States Trustee, if appropriate, shall have 28 days to cure such default from the time of receipt of the default notice.  If such default has not been cured within the applicable time period, the default may be brought to the attention of the Bankruptcy Court or any other court of competent jurisdiction.

*13.4  Notices.*  All notices, requests, elections or demands in connection with the Plan shall be in writing and shall be deemed to have been given when received, or, if mailed, within five (5) business days after the date of mailing if sent through the United States Mail, sufficient first-class postage prepaid, or within two (2) business days after the date of mailing if sent by registered or certified mail, postage prepaid, return receipt requested.

*13.5  Setoff.*  Except as specifically provided in the Plan, no person shall retain any contractual or statutory right to set off any asset in which the Debtors or the Reorganized Debtors have an interest in satisfaction of that Claimant's prepetition Claim.  Any right to set off a claim against an asset of Debtors

or Reorganized Debtors that is not specifically retained is waived.

13.6  *Governing Law*.  Except to the extent that the Bankruptcy Code or other Federal law is applicable, the rights, duties and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the laws of the State of Illinois and without reference to the laws of any other jurisdictions.

13.7  *Successors and Assigns*.  The rights, benefits and obligations of any person or entity named or referred to in this Plan shall be binding upon and will inure to the benefit of the heir, executor, administrator, successor or assignee of such person or entity.

13.8  *Obligations under 28 U.S.C. §1930(a)(6)*.  From and after the Effective Date, the Reorganized Debtors shall be responsible for the payment of all quarterly fees due to the Office of the United States Trustee, pursuant to the provisions of 28 U.S.C. § 1930(a)(6) until this Chapter 11 Bankruptcy Case is closed.

DATED ON this the 15th day of November, 2012.

DEBTORS & DEBTORS-IN-POSSESSION

*/s/ Henry L. Johnson Jr.*
_____
Henry Lee Johnson Jr..

*/s/ Sharon Elaine Williams-Johnson*
_____
Sharon Elaine Williams-Johnson

LAW OFFICE OF R. GREGORY LATHRAM, ESQ.

*/s/ R. Gregory Lathram*
_____
Robert Gregory Lathram
203 West Main Street
Collinsville, IL 62234
618.345.4600 Telephone
618.345.4603 Facsimile
glathram@bankruptcylawyers-metroeast.com

ATTORNEYS FOR DEBTORS

Plan of Reorganization 01

EXHIBIT 1

Definitions

*For the purpose of the Plan and the Disclosure Statement, the following terms shall have the following meanings unless the context requires otherwise.*

1.    "Administrative Claim" means any Claim defined as an "administrative expense" in 11 U.S.C. §503(b) and that is granted priority under 11 U.S.C. §507(a)(1), including (i) a Claim for any cost or expense of administration in connection with this Chapter 11 Case, including, without limitation, any actual, necessary cost or expense of preserving Debtor's estate and of operating Debtor's business that was incurred on or before the Effective Date, and, (ii) all fees and charges assessed against Debtor's estate under the provisions of 28 U.S.C. §1930.

2.    "Allowed Administrative Claim" means any Administrative Claim that has been Allowed by Final Order.

3.    "Allowed Claim" means (i) a Claim against or Interest in Debtor, proof of which, if required, was filed on or before the Bar Date, which is not a Contested Claim or Contested Interest, or (ii) if no proof of claim was so filed, a Claim against Debtor that has been or hereafter is listed by Debtor in its Schedules as liquidated in an amount and not disputed or contingent, or (iii) a Contested Claim allowed by Final Order, provided, however, that an Allowed Claim does not include any Claim or portion thereof which is a Disallowed Claim or which has been subsequently withdrawn, disallowed, released or waived by the holder thereof, by the Plan, or pursuant to a Final Order.

4.    "Allowed Secured Claim" means the Allowed Claim of a Secured Creditor.

5.    "Allowed Unsecured Claim" means the Allowed Claim of an Unsecured Creditor.

6.    "Assets" means all property interests of Debtor of whatever nature or kind arising on the Petition Date under the provisions of 11 U.S.C. §541.

7.    "Bankruptcy Code" means Title 11 of the United States Code, 11 U.S.C. §101, *et seq.*, as enacted in 1978 and thereafter amended.

8.    "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Illinois.

9.    "Bankruptcy Rule" means the applicable rule under the Federal Rules of Bankruptcy Procedure.

10.   "Bar Date" means midnight on November 13, 2012.

11.   "Chapter 11 Bankruptcy Case" or "Bankruptcy Case" means this above-entitled and numbered case filed by Debtor, pursuant to the provisions of Chapter 11 of the Bankruptcy Code.

12. "Claim" means (i) right of payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, or (ii) a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, which any Claimant may have had against Debtor as of the Petition Date.

13. "Claimant" means the holder of a Claim.

14. "Claims Allowance Period" means a 60-day period following Confirmation during which Debtor may object to a Claim, unless an extension is requested by the Debtor and granted by the Bankruptcy Court.

15. "Class" means all of the Claimants holding Claims against Debtor that have been designated as a separate Class in Section 3 of the Plan.

16. "Closing Date" means 30 days after the Effective Date of a Confirmation Order entered by the Bankruptcy Court, unless the Confirmation Order is stayed by a court of competent jurisdiction.

17. "Committee" means the Official Committee of Unsecured Creditors in a Chapter 11 Case.

18. "Confirmation" or "Confirmation of the Plan" means the entry by the Bankruptcy Court of the Confirmation Order.

19. "Confirmation Date" means the date of entry by the Bankruptcy Court of the Confirmation Order.

20. "Confirmation Hearing" means the hearing or hearings to be held before the Bankruptcy Court in which Debtor shall seek Confirmation of the Plan.

21. "Confirmation Order" means the Final Order confirming the Plan.

22. "Consummation" or "Consummation of Plan" means the date upon which the initial payments on Allowed Claims are made.

23. "Contested" when used with respect to a Claim or Interest, means a Claim against or Interest in Debtor that is not allowed and is (i) listed in the Debtor's Schedules as disputed, contingent, or unliquidated and as to which a proof of claim or proof of interest has been timely filed, (ii) listed in the Debtor's Schedules as undisputed, liquidated, and not contingent and as to which a proof of claim or proof of interest has been filed with the Bankruptcy Court, to the extent the proof of claim or proof of interest amount exceeds the amount provided for in Debtor's Schedules, or (iii) the subject of an objection which has been or may be timely filed and which claim has not been disallowed by Final Order, provided, however, that to the extent an objection related to the allowance of only a part of a Claim or Interest, such a Claim or Interest shall be a Contested Claim or Contested Interest only to the extent of the objection.

24.     "Creditor" means a holder of a Claim as of the Petition Date.

25.     "Debtors" mean Henry Lee Johnson Jr. and Sharon Elaine Williams-Johnson, individuals who are residents of the State of Illinois.

26.     "Disallowed Claim" means a Claim against Debtor, or any portion thereof, (i) that has been disallowed by Final Order, or (ii) proof of which has been untimely filed and as to which no Order of allowance has been entered by the Bankruptcy Court, or (iii) listed as disputed, contingent, or unliquidated and as to which no proof of claim or proof of interest has been timely filed.

27.     "Disclosure Statement" means the Disclosure Statement for the Plan, together with any supplements, amendments, or modifications thereto.

28.     "Effective Date" means 14 days, as calculated under Bankruptcy Rule 9006, after the entry of a Confirmation Order by the Bankruptcy Court, unless the Confirmation Order is stayed by a court of competent jurisdiction.

29.     "Estate" means the bankruptcy estate created by the provisions of 11 U.S.C. §541 upon the commencement of this Chapter 11 case.

30.     "Estimated Claim" means any Contested Claim whose amount has been estimated in accordance with the provisions of 11 U.S.C. §502(c).

31.     "Filed" means filed with the Bankruptcy Court.

32.     "Final Order" means (i) an order of the Bankruptcy Court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing, shall then be pending, or (ii) in the event that an appeal, writ of certiorari, reargument or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been affirmed by the highest court to which such order may be appealed, or certiorari has been denied, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, however, that the Confirmation Order shall be treated as a Final Order if no stay pending appeal has been obtained.

33.     "Impaired" describes Claims or Interests for which the treatment under the Plan creates an alteration of legal, equitable or contractual rights otherwise available to the Claimant in respect of such Claim or Interest.

34.     "Individual Equity Interests" mean those individual equity security interests in Debtor.

35.     "Interest" means the interest of its members in Debtor.

36.     "Lien" means all valid and enforceable liens, security interests, claims and encumbrances against any property of the Estate that are permitted by, or not avoided, under applicable provisions of

the Bankruptcy Code.

37.    "Order" means an order or judgment entered by the Bankruptcy Court.

38.    "Other Secured Claim" means a claim that is secured by a lien on or security interest in property in which the Estate has an interest or that is subject to setoff under 11 U.S.C. §553, to the extent of the value of the Claimant's interest in the Estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and that is not classified as a Class 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, or 18 Claim in the Plan.

39.    "Person" means any individual, entity, or organization.

40.    "Petition Date" means July 12, 2012, while references to "Prepetition" and "Postpetition" shall mean, respectively, before and after the Petition Date.

41.    "Plan" means the Plan of Reorganization for Henry Lee Johnson Jr. and Sharon Elaine Williams-Johnson as it may be amended or modified from time to time as permitted herein or in accordance with the provisions of 11 U.S.C. §1127.

42.    "Priority Tax Claim" means any Claim of a governmental unit of the kind specified in 11 U.S.C. §502(i) and 11 U.S.C. §507(a)(8).

43.    "Professionals" means those firms or persons employed by Debtor, pursuant to the provisions of 11 U.S.C. §330.

44.    "Proof of Claim" means the assertion of a Claim against or Interest in Debtor by a Claimant properly completing and filing Official Form 10 as promulgated by the Administrative Office of the United States Courts.

45.    "Professional Fee Claims" means the full amount claimed as compensation for legal, accounting and other professional services or reimbursement of costs under Sections 330, 331 or 503 of the Bankruptcy Code.

46.    "Reorganized Debtor" means Debtor and Debtor-in-Possession after the Effective Date.

47.    "Schedules" means those schedules and statements of financial affairs filed by the Debtor under Bankruptcy Rule 1007, as same may be amended from time to time.

48.    "Secured Claim" means the Claim of a creditor that has a properly perfected lien against collateral which is property of the Estate as of the Petition Date.

49.    "Secured" means a Claim that is secured by a lien on or security interest in property in which the Estate has an interest to the extent of the value of the Claimant's interest in the Estate's interest in such property.

50.    "Taxes" means and includes all Federal, state, county and local income, ad valorem, excise,

stamp and other taxes of any type or nature whatsoever.

51.     "Unimpaired" means a Claim that is not Impaired.

52.     "Unsecured" means a Claim against the Estate that is not Secured and is not entitled to priority under the provisions of 11 U.S.C. §503 and 11 U.S.C. §507.

EXHIBIT 2

Pursuant to Section 6.1(e), Section 6.2, and Section 6.4 of the Plan, Debtors specifically reserve their rights and retain their authority following Confirmation of the Plan to commence or continue to litigate the following judicial and/or administrative proceedings, whether in the Claims Allowance Period or in their present forum:

1. *Sharon Williams-Johnson v. St. Clair County, Illinois*, Case No. 11-AR-963, in the St. Clair Circuit Court in Belleville, Illinois.