UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ILLINOIS

In re:                                                                CASE NO. 12-31309

Henry Lee Johnson, Jr. and
Sharon Elaine Williams-Johnson,

DEBTORS.                                                        CHAPTER 11

## ORDER APPROVING AMENDED DISCLOSURE STATEMENT AND CONFIRMING PLAN

THIS MATTER having come on for a regularly-scheduled hearing to consider final approval of a conditionally-approved Disclosure Statement by Debtors and Debtors-in-Possession Henry Lee Johnson Jr. and Sharon Elaine Williams-Johnson, hereinafter "Debtors," and further, to consider confirmation its Plan of Reorganization, hereinafter "Plan," and said pleadings having previously been transmitted to all creditors and interested parties of record; the Court, having heard counsel for Debtors and counsel for Community First Bank and First County Bank and having reviewed the pleadings thereon and the record herein, has determined after hearing on notice that the conditionally-approved disclosure statement, as amended, finally should be finally approved and that the requirements for confirmation of their Plan, as set forth in 11 U.S.C. §§ 1129(a) and (b) have been satisfied, and being otherwise fully, and, in all ways, sufficiently advised,

IT IS ORDERED that:

1. The Disclosure Statement, as amended, is approved and Debtors' Plan of Reorganization, as further modified by this Order, is confirmed *nunc pro tunc* as of January 7, 2013, provided, however, that the Plan shall be deemed amended in the following respects:

…. ….

*4.3  Treatment of Secured Claims.*

*Class 1 – Community First Bank ("CFB") Claim in the approximate amount of $159,882.19,* prior to Debtors receiving credit for all pre-confirmation adequate protection payments. Reorganized Debtors shall pay this Claim in full, with interest at the rate of 6.00 percent per annum commencing on the Effective Date, in fifty-nine (59) equal monthly installments of principal and interest based on a twenty- (20) year amortization period, and a final payment of all unpaid principal and interest on the fifth (5th) anniversary of the Closing Date; said payments commencing on or before the Closing Date, and  further, provided as follows:

(a)     Except as otherwise expressly provided herein, all terms and conditions of  the loan documents evidencing or securing this Claim (the "Loan Documents") shall remain in full force and effect, and Claimant also shall retain all liens securing payment of this Claim until payment in full is made.

(b)    In addition to monthly payments of principal and interest, commencing on the Closing Date, and continuing on the same day of each month thereafter until the Claim is paid in full, Reorganized Debtors shall pay CFB a monthly payment to be applied to real estate taxes on the real property commonly known as 321 Gettysburg Road in Belleville, Illinois (the "Gettysburg Premises"), as estimated by CFB from time to time in its reasonable discretion (the "Estimated Payment").  The amount of the Estimated Payment shall be $680.00, until the real estate taxes on the Gettysburg Premises for the year 2012 have been paid in full.  Thereafter, the amount of the Estimated Payment shall be equal to one twelfth (1/12) of the estimated amount of the real estate taxes for 2013 and subsequent years.  Bank shall use and apply the Estimated Payments to pay real estate taxes on the Gettysburg Premises upon Reorganized Debtors' timely presentation of tax statements to Bank, accompanied by payment of the amount, if any, by which the amount due exceeds the Estimated Payments made by Reorganized Debtors.  Within thirty (30) days after the Claim is paid in full, CFB shall refund to Reorganized Debtors the Estimated Payments, if any, in excess of the amount applied to real estate taxes on the Gettysburg Premises.

(c)    In addition to the above-described payments, commencing on the Closing Date, and continuing on the same day of each month thereafter until the Claim is paid in full, Reorganized Debtors shall deposit the sum of $250.00 per month in a demand deposit account maintained at CFB as a reserve for maintenance and repair of the Gettysburg Premises (the "Gettysburg Reserve Payment").  Reorganized Debtors shall use funds deposited in such account solely for expenses incurred to maintain and repair the Gettysburg Premises and shall provide CFB with any itemized written statement of all expenses paid from such account during each calendar month within thirty (30) days after the last day of each calendar month.  The amount of the Gettysburg Reserve Payment shall be adjusted on each anniversary of the Effective Date if CFB, in its reasonable discretion, determines that the amount is insufficient to pay the reasonable expenses likely to be incurred to properly maintain the Gettysburg Premises during the ensuing twelve- (12) month period.

(d)    In the event the Reorganized Debtors default in (i) any payment provided above and fail to cure such default within fourteen (14) days or (ii) performance of any other term or condition of the Plan or the Loan Documents (as modified by the Plan) and fail to cure such default within thirty (30) days, CFB may file a certification of such default with the Court and serve a copy on Debtors' counsel, and further, provided that the Reorganized Debtors shall not be entitled to more than two (2) cures in any 12-month period.  Upon the filing of such certification, the automatic stay with respect to the Gettysburg Premises shall be terminated, without further notice or hearing, and the unpaid balance of the Claim shall be immediately due and payable.

*Class 2 – Community First Bank Claim in the approximate amount of $172,456.06,* prior to Debtors receiving credit for all pre-confirmation adequate protection payments.  Reorganized Debtors shall pay this Claim in full, with interest at the rate of 6.00 percent per annum commencing on the Effective Date, in fifty-nine (59) equal

monthly installments of principal and interest based on a twenty- (20) year amortization period, and a final payment of all unpaid principal and interest on the fifth (5th) anniversary of the Closing Date; said payments commencing on or before the Closing Date, and further, provided as follows:

      (a)    Except as otherwise expressly provided herein, all terms and conditions of the loan documents evidencing or securing this Claim (the "Loan Documents") shall remain in full force and effect, and Claimant also shall retain all liens securing payment of this Claim until payment in full is made.

      (b)    In addition to monthly payments of principal and interest, commencing on the Closing Date, and continuing on the same day of each month thereafter until the Claim is paid in full, Reorganized Debtors shall pay CFB a monthly payment to be applied to real estate taxes on the real property commonly known as 302 Estate Drive in O'Fallon, Illinois (the "Estate Drive Premises"), as estimated by CFB from time to time in its reasonable discretion (the "Estimated Payment"). The amount of the Estimated Payment shall be $820.00, until the real estate taxes on the Estate Drive Premises for the year 2012 have been paid in full. Thereafter, the amount of the Estimated Payment shall be equal to one twelfth (1/12) of the estimated amount of the real estate taxes for 2013 and subsequent years. Bank shall use and apply the Estimated Payments to pay real estate taxes on the Estate Drive Premises upon Reorganized Debtors' timely presentation of tax statements to Bank, accompanied by payment of the amount, if any, by which the amount due exceeds the Estimated Payments made by Reorganized Debtors. Within thirty (30) days after the Claim is paid in full, CFB shall refund to Reorganized Debtors the Estimated Payments, if any, in excess of the amount applied to real estate taxes on the Estate Drive Premises.

      (c)    In addition to the above-described payments, commencing on the Closing Date, and continuing on the same day of each month thereafter until the Claim is paid in full, Reorganized Debtors shall deposit the sum of $200.00 per month in a demand deposit account maintained at CFB as a reserve for maintenance and repair of the Estate Drive Premises (the "Estate Drive Reserve Payment"). Reorganized Debtors shall use funds deposited in such account solely for expenses incurred to maintain and repair the Estate Drive Premises and shall provide CFB with any itemized written statement of all expenses paid from such account during each calendar month within thirty (30) days after the last day of each calendar month. The amount of the Estate Drive Reserve Payment shall be adjusted on each anniversary of the Effective Date if CFB, in its reasonable discretion, determines that the amount is insufficient to pay the reasonable expenses likely to be incurred to properly maintain the Estate Drive Premises during the ensuing twelve- (12) month period.

      (d)    In the event the Reorganized Debtors default in (i) any payment provided above and fail to cure such default within fourteen (14) days or (ii) performance of any other term or condition of the Plan or the Loan Documents (as modified by the Plan) and fail to cure such default within thirty (30) days, CFB may file a certification of such default with the Court and serve a copy on Debtors'

counsel, and further, provided that the Reorganized Debtors shall not be entitled to more than two (2) cures in any 12-month period. Upon the filing of such certification, the automatic stay with respect to the Estate Drive Premises shall be terminated, without further notice or hearing, and the unpaid balance of the Claim shall be immediately due and payable.

*Class 3 – Community First Bank Claim in the approximate amount of $63,614.82,* prior to Debtors receiving credit for all pre-confirmation adequate protection payments. Reorganized Debtors shall pay this Claim in full, with interest at the rate of 6.00 percent per annum commencing on the Effective Date, in fifty-nine (59) equal monthly installments of principal and interest based on a twenty- (20) year amortization period, and a final payment of all unpaid principal and interest on the fifth (5th) anniversary of the Closing Date; said payments commencing on or before the Closing Date, and further, provided as follows:

(a)  Except as otherwise expressly provided herein, all terms and conditions of the loan documents evidencing or securing this Claim (the "Loan Documents") shall remain in full force and effect, and Claimant also shall retain all liens securing payment of this Claim until payment in full is made.

(b)  In addition to monthly payments of principal and interest, commencing on the Closing Date, and continuing on the same day of each month thereafter until the Claim is paid in full, Reorganized Debtors shall pay CFB a monthly payment to be applied to real estate taxes on the real property commonly known as 2864 North 89th Street in Fairview Heights, Illinois, (the "Fairview Heights Premises"), as estimated by CFB from time to time in its reasonable discretion (the "Estimated Payment"). The amount of the Estimated Payment shall be $420.00, until the real estate taxes on the Fairview Heights Premises for the year 2012 have been paid in full. Thereafter, the amount of the Estimated Payment shall be equal to one twelfth (1/12) of the estimated amount of the real estate taxes for 2013 and subsequent years. Bank shall use and apply the Estimated Payments to pay real estate taxes on the Fairview Heights Premises upon Reorganized Debtors' timely presentation of tax statements to Bank, accompanied by payment of the amount, if any, by which the amount due exceeds the Estimated Payments made by Reorganized Debtors. Within thirty (30) days after the Claim is paid in full, CFB shall refund to Reorganized Debtors the Estimated Payments, if any, in excess of the amount applied to real estate taxes on the Fairview Heights Premises.

(c)  In addition to the above-described payments, commencing on the Closing Date, and continuing on the same day of each month thereafter until the Claim is paid in full, Reorganized Debtors shall deposit the sum of $50.00 per month in a demand deposit account maintained at CFB as a reserve for maintenance and repair of the Fairview Heights Premises (the "Fairview Heights Reserve Payment"). Reorganized Debtors shall use funds deposited in such account solely for expenses incurred to maintain and repair the Fairview Heights Premises and shall provide CFB with any itemized written statement of all expenses paid from such account during each calendar month within thirty (30) days after the last day of each calendar month. The amount of the Fairview Heights Reserve Payment shall be adjusted on each

anniversary of the Effective Date if CFB, in its reasonable discretion, determines that the amount is insufficient to pay the reasonable expenses likely to be incurred to properly maintain the Fairview Heights Premises during the ensuing twelve- (12) month period.

(d) In the event the Reorganized Debtors default in (i) any payment provided above and fail to cure such default within fourteen (14) days or (ii) performance of any other term or condition of the Plan or the Loan Documents (as modified by the Plan) and fail to cure such default within thirty (30) days, CFB may file a certification of such default with the Court and serve a copy on Debtors' counsel, and further, provided that the Reorganized Debtors shall not be entitled to more than two (2) cures in any 12-month period. Upon the filing of such certification, the automatic stay with respect to the Fairview Heights Premises shall be terminated, without further notice or hearing, and the unpaid balance of the Claim shall be immediately due and payable.

*Class 4 – Community First Bank Claim in the approximate amount of $8,961.81,* prior to Debtors receiving credit for all pre-confirmation adequate protection payments. Reorganized Debtors shall pay this Claim in full, with interest at the rate of 6.00 percent per annum commencing on the Effective Date, in fifty-nine (59) equal monthly installments of principal and interest based on a twenty- (20) year amortization period, and a final payment of all unpaid principal and interest on the fifth (5th) anniversary of the Closing Date; said payments commencing on or before the Closing Date, and further, provided as follows:

(a) Except as otherwise expressly provided herein, all terms and conditions of the loan documents evidencing or securing this Claim (the "Loan Documents") shall remain in full force and effect, and Claimant also shall retain all liens securing payment of this Claim until payment in full is made.

(b) In the event the Reorganized Debtors default in (i) any payment provided above and fail to cure such default within fourteen (14) days or (ii) performance of any other term or condition of the Plan or the Loan Documents (as modified by the Plan) and fail to cure such default within thirty (30) days, CFB may file a certification of such default with the Court and serve a copy on Debtors' counsel, and further, provided that the Reorganized Debtors shall not be entitled to more than two (2) cures in any 12-month period. Upon the filing of such certification, the automatic stay with respect to the Gettysburg Premises, the Estate Drive Premises and the Fairview Heights Premises shall be terminated, without further notice or hearing, and the unpaid balance of the Claim shall be immediately due and payable.

. . . .    . . . .

*Class 13 – GMAC Claim in the amount of $67,413.99.* The Reorganized Debtors shall pay this Claim in full, at 6.00 percent interest, amortized over 240 months from the Effective Date; said payments commencing on or before the Closing Date, and further, provided that the Reorganized Debtors shall remain obligated to perform all

of their obligations under the original loan documents and that this Claimant also shall retain its pre-petition liens on the real estate, located at 4917-19 West Main Street in Belleville, Illinois, securing repayment of this indebtedness until payment in full is made.

At full occupancy, this duplex generates monthly income of $1,400.00 per month and at 90 percent occupancy, the monthly income is $1,260.00 per month and GMAC will receive $482.97 per month in principal and interest on its claim, plus an escrow payment of approximately $322.74, for a total monthly payment amount of $805.71. Miscellaneous maintenance and reserve for replacement costs for this duplex are estimated to run $100.00 per month.

. . . .    . . . .

*Class 15 – First County Bank Claim in the approximate amount of $47,248.40, prior to Debtors receiving credit for all pre-confirmation adequate protection payments.* The Reorganized Debtors shall pay this Claim in full, at 6.00 percent interest, amortized over 180 months from the Effective Date; said payments commencing on or before the Closing Date, and further, provided that the Reorganized Debtors shall remain obligated to perform all of their obligations under the original loan documents and that this Claimant also shall retain its pre-petition liens on the real estate, located at 1411 Magdalena Street in Fairview Heights, Illinois, securing repayment of this indebtedness until payment in full is made.

    a.    At full occupancy, this 4 BR, 1 BA frame house generates annual income of $10,200.00 or $850.00 per month and at 90 percent occupancy, the annual income is $9,180.00 or $765.00.00 per month. First County Bank will receive approximately $398.71 per month in principal and interest on its claim. The Reorganized Debtors will remain responsible for timely payment of real estate taxes and insurance on this property in the approximate amount of $284.67, for a total monthly payment amount of $683.38. Miscellaneous maintenance and reserve for replacement costs for this house are estimated to run $50.00 per month.

    b.    In the event debtors default in (i) any payment provided above and fail to cure such default within fourteen (14) days or (ii) performance of any other term or condition of the Plan or the Loan Documents (as modified by the Plan) and fail to cure such default within thirty (30) days, First County Bank may file a certification of such default with the Court and serve a copy on Debtors' counsel, and further, provided that the Reorganized Debtors shall not be entitled to more than two (2) cures in any 12-month period. Upon the filing of such certification, the automatic stay with respect to the real estate located at 1411 Magdalena Street in Fairview Heights, Illinois, shall be terminated, without further notice or hearing, and the unpaid balance of the Claim shall be immediately due and payable.

*Class 16 – First County Bank Claim in the approximate amount of $327,892.42, prior to Debtors receiving credit for all pre-confirmation adequate protection payments.* The Reorganized Debtors shall pay this Claim in full, at 6.00 percent interest, amortized over 180 months from the Effective Date; said payments commencing on or before the

Closing Date, and further, provided that the Reorganized Debtors shall remain obligated to perform all of their obligations under the original loan documents and that this Claimant also shall retain its pre-petition liens on the real estate, located at 10 South 35th Street in Belleville, Illinois, and at 304 Estate Drive in O'Fallon, Illinois, securing repayment of this indebtedness until payment in full is made.

       a.     At full occupancy, the 7-unit apartment building and the 4-unit apartment building generate monthly income of $7,403.00 and at 90 percent occupancy, the monthly income is $6,662.70. First County Bank will receive $2,766.94 per month in principal and interest on its claim. The Reorganized Debtors will remain responsible for timely payment of real estate taxes and insurance on these properties in the approximate amount of $355.63, for a total monthly payment amount of $3,122.57. Common areas, miscellaneous maintenance and reserve for replacement costs for these apartment buildings are estimated to run $550.00 per month.

       b.     In the event debtors default in (i) any payment provided above and fail to cure such default within fourteen (14) days or (ii) performance of any other term or condition of the Plan or the Loan Documents (as modified by the Plan) and fail to cure such default within thirty (30) days, First County Bank may file a certification of such default with the Court and serve a copy on Debtors' counsel, and further, provided that the Reorganized Debtors shall not be entitled to more than two (2) cures in any 12-month period. Upon the filing of such certification, the automatic stay with respect to the real estate located at 10 South 35th Street in Belleville, Illinois, and at 304 Estate Drive in O'Fallon, Illinois, shall be terminated, without further notice or hearing, and the unpaid balance of the Claim shall be immediately due and payable.

. . . .    . . . .

*4.4 Treatment of Unsecured Claims.*

a)  Each Claimant holding an Unsecured Claim, except as otherwise set forth in this Plan, shall be paid by the Reorganized Debtors from an escrow account, funded in the amount of $4,000.00 per month for 60 months until a total pool amount of $240,000.00 has been paid with funds generated from the continued operation of their business or until such time as there is a recovery, if any, from the proceeds of that breach of contract lawsuit entitled *Sharon Williams-Johnson v. St. Clair County, Illinois*, Case No. 11-AR-963, in the St. Clair Circuit Court in Belleville, Illinois, provided, however, that the Reorganized Debtors shall not pay more than the total amount of the Allowed Unsecured Claims from either the stream of income from continued operation of their business or from the lawsuit recovery, if any, excluding the Allowed Unsecured Claims held by the servicers of student loans, which the Reorganized Debtors, in their sole discretion, may treat as an ongoing payment obligation over 240 months following the effective date of the Plan.

. . . .    . . . .

*13.3 Notice of Default.* In the event of any alleged default under the Plan, any Claimant or party-in-interest must give a written default notice to the Reorganized Debtors or the United States Trustee, as the case may be, with copies to counsel of record for Debtors, as applicable, specifying the nature of the default.  Upon receipt of the default notice, the Reorganized Debtors or the United States Trustee, if appropriate, shall have 14 days to cure a default arising from a failure to make a payment when due hereunder and 30 days for any other default in the performance of any other term or condition of the Plan or the Loan Documents (as modified by the Plan) from the time of receipt of the default notice, and, further, provided that the Reorganized Debtors shall not be entitled to more than two (2) cures in any 12-month period.  If such default has not been cured within the applicable time period, the default may be brought to the attention of the Bankruptcy Court or any other court of competent jurisdiction.

. . . .    . . . .

2. Within seven (7) days after entry of this Order, the Reorganized Debtors shall transmit by mail to all creditors, equity interest holders, and interested parties of record a copy of this Order Approving Amended Disclosure Statement and Confirming Plan and a copy of the Plan of Reorganization – Restated with Modifications, containing the aforesaid modifications. **All creditors shall have fourteen (14) days from the date of this transmittal to file an objection(s) to this Order.**

3. The Reorganized Debtors shall file a Certificate of Service concerning the aforesaid transmittal with the Court within seven (7) days thereafter.

4. The Reorganized Debtors shall be responsible to file (1) a report with the Court certifying that they have complied with the terms and conditions of the Plan (and if applicable as amended or modified) and that they are otherwise eligible for a discharge under 11 U.S.C. § 1141(d)(5); (2) a Motion for Entry of Discharge Order; and (3) an Application for Final Decree pursuant to Bankruptcy Rule 3022.

Counsel for the moving party shall serve a copy of this Order by mail to all interested parties who were not served electronically.

ENTERED: January 17, 2013

/s/ William V. Altenberger
_____
UNITED STATES BANKRUPTCY JUDGE/8


REVIEWED PRIOR TO ENTRY:

*/s/ Mark D. Skaggs*
_____
MARK D. SKAGGS, ESQ.
OFFICE OF THE UNITED STATES TRUSTEE

*/s/ R. Gregory Lathram*
_____

R. GREGORY LATHRAM, ESQ.
ATTORNEY FOR DEBTORS-IN-POSSESSION

/s/ *David L. Antognoli*

―――――――――――――――――――――――――
DAVID L. ANTOGNOLI, ESQ.
ATTORNEY FOR COMMUNITY FIRST BANK

/s/ *Kevin J. Stine*

―――――――――――――――――――――――――
KEVIN J. STINE, ESQ.
ATTORNEY FOR FIRST COUNTY BANK